Filed 2/6/26  Hadley v. Haynes CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| JEFF HADLEY, | |
| Plaintiff and Appellant, | E084551 |
| v. | (Super.Ct.No. TRUPS1900269) |
| TONY HAYNES et al., | OPINION |
| Defendants and Respondents. | |

APPEAL from the Superior Court of San Bernardino County.  Douglas Kent Mann, Judge.  Affirmed.

Jeff Hadley, in pro. per., for Plaintiff and Appellant.

Law Office of Mark W. Regus and Mark W. Regus for Defendants and Respondents.

1

Plaintiff and appellant Jeff Hadley (Resident) brought a petition within an already existing probate case, seeking to quiet title to a house he resided in and seeking restitution for mortgage payments he made. The probate court summarily adjudicated the quiet title claim against Resident. Following a bench trial, the probate court concluded that Resident was not entitled to restitution.

Resident raises three contentions on appeal. First, Resident contends the probate court's reasoning on the restitution claim failed to address Resident's theory of liability. Second, Resident asserts the probate court erred in finding that $1,300 was below the market rental value of the house because there was no expert testimony establishing fair market rental value. Third, Resident contends the respondent in this court, Tony Haynes, lacked standing to appear as a defendant/objector in the probate court. We affirm the judgment.

## FACTUAL AND PROCEDURAL HISTORY

The Leon and Gail Hadley Trust dated December 22, 2004 (the Trust) held title to a single-family home in Upland (the House). Leon C. Hadley (Father) and Rowena Gail Hadley (Mother) were the trustors, the trustees, and the original beneficiaries of the Trust. Father and Mother (collectively, Parents) had two children: Resident and George Scott Hadley (Brother).

"Prior to 2010, [Resident] struggled with drug addiction and was in and out of jail multiple times." As a result, Parents disinherited Resident by the terms of the Trust reading, "It is the intent of [Parents] **not** to provide for [Resident]." After Parents' deaths, all the Trust assets were to be distributed to Brother, and then the Trust would

terminate. If Brother did not survive to receive distribution of the Trust assets, then the Trust assets would be distributed to Brother's son, Max Hadley (Nephew) when he reached the age of 25 years old. The persons designated to succeed Parents as trustees were: Brother, if he was unavailable then Brother's wife, if she was unavailable then Donnasue Smith Ortiz.

In 2005, Parents moved to Texas with Brother. The House became a rental. In 2008, Parents, as trustees of the Trust, took a $180,000 loan (the mortgage) from Washington Mutual Bank, secured by the House. The mortgage was taken for Brother's benefit.

In 2010, Resident was sober and no longer incarcerated. Resident was residing with his employers, who provided him with free room and board as a benefit of his job. Also in 2010, Resident reconciled with Parents. Parents offered to let Resident move into the House if he paid the taxes and insurance for the House; Brother would pay the mortgage. In 2010, Resident moved into the House and paid the taxes and insurance.

According to Resident, it was understood by Parents, Resident, and Brother that, after Parents' deaths, Brother would distribute the House to himself and then transfer it to Resident. Alternatively, but still according to Resident, the agreement was that, after Parents' deaths, the Trust would continue holding title to the House until Brother completed paying the mortgage, and then Brother would distribute the House to himself and transfer the House to Resident. Under that arrangement, Brother would pay the mortgage and water bill, while Resident paid the other utilities and maintenance costs.

3

Mother died in 2012. Father died in 2014. Days after Father's funeral, Brother's wife died. Brother fell into a depression and "went from drinking Coors Light to hard liquor." Brother did not make the monthly mortgage payments and never distributed the House to himself.

In the summer of 2015, Brother and Resident jointly paid the past due amount on the mortgage after a notice of trustee's sale was recorded against the House. A year later, in the summer of 2016, the House again fell into foreclosure. In November 2016, Resident paid $14,643.16 to stop the foreclosure. In January and March 2017, Resident made the monthly mortgage payments.

On April 5, 2017, Brother died due, in part, to "alcoholic liver cirrhosis." Upon Brother's death, Nephew was an orphaned minor. Nephew went to live with friends. In 2017, in a Texas court, Tony Haynes (Administrator) was appointed as (1) permanent guardian of Nephew's estate through October 14, 2018, and (2) dependent administrator of Brother's estate.

In May 2017, Resident assumed the responsibility of making the ongoing monthly mortgage payments of approximately $1,300. In mid-2018, Resident faced health issues, which caused him to spend all of his money on medical treatments. In September 2019, Administrator received a letter from ZBS Law, LLP, reflecting the House was in foreclosure because the mortgage had not been paid since March 2019; $12,435.40 was required to reinstate the mortgage. Administrator paid the amount due on the mortgage using money from Brother's estate.

4

In November 2019, Donnasue Smith Ortiz declined to serve as successor trustee of the Trust. Nephew reached the age of 18 on November 24, 2019. On November 26, 2019, Administrator petitioned the probate court to appoint a successor trustee because the Trust had been left without a trustee. The probate court appointed Christina Erickson-Taube (Trustee), a professional fiduciary, as trustee. In March 2020, Trustee had Resident served with a 60-day notice of termination of his tenancy. In September 2020, Trustee filed an unlawful detainer complaint against Resident.

Within the probate case started by Administrator's petition for appointment of a trustee, Resident filed a petition to quiet title to the House, to recover restitution for the mortgage payments, and requesting the court dismiss Trustee's unlawful detainer complaint. The caption of Resident's petition reads, "In Re: Leon and Gail Hadley Family Trust dated December 22, 2004." In the register of actions, both Administrator and Resident are listed as petitioners; no one is labeled as a respondent in the probate court.

In Resident's quiet title cause of action, he alleged that he is the owner of the House through adverse possession. In an alternative cause of action, labeled "constructive trust allegations," Resident asserted, "By virtue of Respondent's conduct in failing to transfer the [House] to [Resident] upon demand and requiring [Resident] to make payments on a loan taken out for the benefit of [Brother], Respondents hold title to the [House] and to the monies or principal paid on the [mortgage] encumbering the [House] as constructive trustee for the benefit of [Resident]." Resident does not explicitly identify "respondents."

5

Similarly, in a cause of action labeled "accounting and unjust enrichment allegations," Resident alleged, "Respondents however claim they are owners of the [House].  [Resident] therefore seeks an accounting of all funds paid by [Resident] for upkeep, repair, maintenance, and improvements, as well as any payments made on the [mortgage] which was taken for the benefit of [Brother] which if not accounted for would result in unjust enrichment to the respondents."

Administrator moved for summary adjudication of Resident's quiet title cause of action.  Administrator asserted the five-year period required for adverse possession was tolled while Nephew was a minor, which meant Resident could not meet the five-year requirement.  In June 2023, the probate court granted the motion on the basis that the five-year requirement for adverse possession had not been met.

The probate court held a bench trial on Resident's claims seeking restitution for the money he spent on the House.  Resident, Administrator, and Trustee appeared at the trial.  Resident testified that the fair market value for renting the House would be more than $1,300 per month.  The following was also said during Resident's testimony:

Attorney:  "So at the end of the day, it wasn't the worst deal paying $1,300 a month to live there, right?

"[Resident]:  That wasn't the deal, though.  My brother asked me to pay that.  And I told my brother I would start paying it.  If he couldn't do it, I would pay it."

The probate court entered judgment against Resident. The probate court found Resident failed to prove the Trust was unjustly enriched because Resident paid the $1,300 monthly mortgage "in exchange for being able to reside in the home at a below fair market rate."

**DISCUSSION**

A.   PROBATE COURT'S REASONING

Resident contends he was "flabbergasted" by the probate court's reasoning because his theory of liability was not based upon being a renter who paid more than the fair market value of the property. Resident asserts his theory of liability was that he was the "expected recipient of title to the [House]."

Typically, "[w]e do not review the trial court's reasoning, but rather its ruling. A trial court's order is affirmed if correct on any theory, even if the trial court's reasoning was not correct." (*J.B. Aguerre, Inc. v. American Guarantee & Liability Ins. Co.* (1997) 59 Cal.App.4th 6, 15-16.) Nevertheless, we will discuss Resident's contention that the probate court's reasoning was erroneous.

We agree that the probate court's reasoning did not address the heart of Resident's complaint. Resident's position is that he was never obligated to make the mortgage payments, and he only made those payments to save the House from foreclosure so that he could one day be the owner of the House. Resident contends the money he contributed toward the mortgage should result in a constructive trust.

7

" 'A constructive trust is an involuntary equitable trust created by operation of law as a remedy to compel the transfer of property from the person wrongfully holding it to the rightful owner. [Citations.] The essence of the theory of constructive trust is to prevent unjust enrichment and to prevent a person from taking advantage of his or her own wrongdoing.' " (*Meister v. Mensinger* (2014) 230 Cal.App.4th 381, 399.)

Critical to this case, there must be an underlying wrongful act. (Civ. Code, § 2224; *Martin v. Kehl* (1983) 145 Cal.App.3d 228, 237-238.) Resident asserts it was wrongful for the Trust and/or Brother's estate to benefit from Resident's mortgage payments when Resident only made those payments because he believed the House would one day belong to him. We infer Resident is contending that the wrongful act is a breach of Parents' promise—that Brother would transfer the House to Resident— because Resident detrimentally relied on that promise, i.e., promissory estoppel. (*C & K Engineering Contractors v. Amber Steel Co.* (1978) 23 Cal.3d 1, 8.)

"The elements of a promissory estoppel claim are '(1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) [the] reliance must be both reasonable and foreseeable; and (4) the party asserting the estoppel must be injured by his reliance.' " (*US Ecology, Inc. v. State of California* (2005) 129 Cal.App.4th 887, 901.)

As to the first two elements, there is evidence that (1) Parents promised Resident that Brother would transfer the House to Resident after Parents' deaths; and (2) Resident relied on the promise to his detriment by making mortgage payments that he had no obligation to make. The third element of reasonable reliance is where Resident's

evidence fails.  " '[A] party plaintiff's misguided belief or guileless action in relying on a statement on which no reasonable person would rely is not justifiable reliance . . . .  "If the conduct of the plaintiff in the light of his own intelligence and information was manifestly unreasonable, . . . he will be denied a recovery." '  [Citation.]  A mere 'hopeful expectation [] cannot be equated with the necessary justifiable reliance.' "  (*Aceves v. U.S. Bank, N.A.* (2011) 192 Cal.App.4th 218, 227.)

Resident began paying the mortgage after Parents died.  At the time, Brother was suffering from depression and drinking heavily.  Brother failed to distribute the House to himself, and Brother allowed the House to twice fall into foreclosure.  The second time the House fell into foreclosure, Resident began paying the mortgage.

In his opening brief to this court, Resident asserts, "But for [Resident's] payments, there would be no house belonging to the Trust."  (All caps omitted.)  This argument does not aid Resident because the assertion is that Brother had no part in stopping the foreclosure.  Brother's failure to make the monthly mortgage payments, failure to stop the second foreclosure, and failure to distribute the House to himself would indicate to a reasonable person that Brother was not taking any steps necessary to preserve the House as an asset.  A reasonable person would understand from that information that it was extremely unlikely Brother would distribute the House to himself and then transfer ownership to Resident.  Thus, it was not reasonable for Resident to rely on Parents' promise that Brother would transfer the House to Resident.

9

Because it was not reasonable to rely on Parents' promise at the time Resident made the mortgage payments, there is no underlying wrong for a constructive trust claim. Therefore, Resident is correct that the probate court's reasoning was not exactly on point with his theory of liability, but we will affirm because the probate court's ruling was correct due to a lack of evidence establishing reasonable reliance on Parents' promise. (*J.B. Aguerre, Inc. v. American Guarantee & Liability Ins. Co.*, *supra*, 59 Cal.App.4th 6, 15-16 ["A trial court's order is affirmed if correct on any theory, even if the trial court's reasoning was not correct"].)

B.  FAIR MARKET VALUE

Resident contends the probate court erred in finding that $1,300 was below the market rental value of the House because there was no expert testimony establishing the House's fair market rental value.

Evidence Code section 813, subdivision (a), sets forth a list of who is permitted to testify regarding the value of property. The list includes (1) "[w]itnesses qualified to express such opinions," (2) the property owner or the spouse of the property owner, or (3) when a corporation owns the property, then a designated corporate officer, employee, or partner. Resident's testimony that $1,300 is below market value does not meet the statutory criteria. The probate court erred.

The probate court's error is harmless because, as explained *ante*, Resident failed to establish it was reasonable to rely on Parents' promise that Brother would distribute the House to himself and then transfer ownership to Resident. (Code Civ. Proc., § 475

10

[A judgment will not be reversed unless "a different result would have been probable" absent the error].)

## C.    STANDING

### 1.    *PROCEDURAL HISTORY*

Shortly before the trial, Resident applied ex parte to have Administrator dismissed from the case due to a lack of standing.  Resident contended that Administrator involved himself in the case in his role as guardian of Nephew's estate, but Nephew was 19 years old when Resident filed his petition so Administrator was no longer Nephew's guardian, and Administrator should not have been involved in the case.

In opposing the ex parte application, Administrator asserted (A) there was no emergency justifying an ex parte application, and (B) he had standing as the administrator of Brother's estate because "[Brother's] estate is entitled to receive the [House] from the Trustee of the Trust following the conclusion of this matter."[1]  The probate court reserved ruling on the standing issue until the trial.

In a tentative ruling, the probate court said, "[T]here is standing here.  Based upon the Court's review of the entirety of the file, the Court does believe that [Administrator], as administrator of the estate of [Brother], does have standing to object."  The probate court also said Resident had forfeited the issue of Administrator's standing by failing to raise it until after the ruling on Administrator's motion for

---

[1]  In Administrator's summary adjudication argument on the quiet title claim, he asserted Nephew owned the House.

summary adjudication of the quiet title cause of action. The probate court made the tentative ruling its final ruling on the issue of standing.

2. *ANALYSIS*

Resident contends Administrator lacks standing to appear as a defendant/objector in the case. "To have standing, a party must be beneficially interested in the controversy, and have 'some special interest to be served or some particular right to be preserved or protected.' [Citation.] This interest must be concrete and actual, and must not be conjectural or hypothetical." (*Iglesia Evangelica Latina, Inc. v. Southern Pacific Latin American Dist. of the Assemblies of God* (2009) 173 Cal.App.4th 420, 445.)

Parents, as trustees of the Trust, took out the mortgage to benefit Brother. Brother was responsible for paying the mortgage. When Resident sued, it was unclear if he was seeking restitution from (1) the Trust because it benefitted from Resident's mortgage payments by gaining equity in the House, and/or (2) Brother's estate because it benefitted by not having to make the mortgage payments. For example, Resident alleged, "[Resident] therefore seeks an accounting of all funds paid by [Resident] for upkeep, repair, maintenance, and improvements, as well as any payments made on the [mortgage] which was taken for the benefit of [Brother] which if not accounted for would result in unjust enrichment to the respondents." Resident's allegations do not clearly indicate if he believes the Trust, Brother's estate, or both were unjustly enriched. Because they both benefitted from Resident's mortgage payments, one could reasonably conclude that Resident was suing the Trust and Brother's estate for restitution, thus giving Administrator standing to protect Brother's estate. The trial court did not err.

12

**DISPOSITION**

The judgment is affirmed.  The parties are to bear their own costs on appeal.

(Cal. Rules of Court, rule 8.278(a)(4).)

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER _____

J.

We concur:

McKINSTER _____

Acting P. J.

CODRINGTON _____

J.

13